REBECCA ARNETT

*v.*

MARTIN L. TRIMMER, assignee.

After executing a mortgage on all his chattels, the mortgagor made an assignment for the benefit of his creditors.   The assignee thereunder, with the acquiescence of the mortgagee, took possession of the chattels and proceeded to sell them by virtue of his powers as such assignee.   After he had sold part of them, the mortgagee obtained an injunction against any further sales, on the ground that the remaining chattels were insufficient to satisfy the mortgage thereon, which proved to be the fact afterwards.—*Held*, that the assignee was entitled to deduct, from the proceeds of his sale, the costs legally incurred by him under the assignment and consequent sale, as against the mortgagee.

On bill, answer and proofs:

*Mr. John Lilly*, for complainant.

*Mr. W. F. Hayhurst*, for defendants Arnett and Martindale.

*Mr. M. L. Trimmer*, for himself, as assignee.

BIRD, V. C.

Arnett, a son of the complainant, was engaged in the mercantile business, and sold his interest therein to one Griggs. At the time of the sale his mother held a chattel mortgage upon the goods, and so did Arnett and Martindale. After the sale Griggs executed chattel mortgages for like amounts to the complainant and to Arnett and Martindale; but they were not immediately recorded, nor were the transactions with respect to them actually consummated at the time, because, as the proof shows, there was a promise upon the part of Griggs to pay the cash for the amount due upon the said mortgages. This, however, was not accomplished. Such sale was made on the 1st of January. On the 1st day of February the mortgages were acknowledged and delivered. The mortgage of the complainant was recorded on the 2d of February, but that of Arnett and Martindale not until March 16th. Soon after this, Griggs made an assignment to the defendant Mr. Trimmer of all his estate, for the benefit of his creditors. As such assignee, he immediately proceeded to make sale of a portion of the goods, and sold to the amount of $232.10 worth, at an actual expense to him of $23.50. At this juncture the bill in this case was filed in order to prevent Mr. Trimmer, as such assignee, from further proceeding with the sale of the said goods or intermeddling therewith; the complainant claiming that her interest in the said goods was equal to, if not more, than the value thereof, and that as such mortgagee she had a right, under the circumstances presented in the bill, to make disposition of them. Such a case was made by the bill and proofs as to satisfy the court that Mr. Trimmer, as such assignee, ought to be restrained, and an injunction was accordingly issued. Since then it was deemed expedient to appoint a receiver to take charge of and dispose of the goods, and as such he has disposed of them, the result of which, so far as appears, is an ample justification of his appointment in behalf of the mortgagees; sufficient assets not having been realized to satisfy the amount due upon the lawful encumbrances.

An answer was filed, disputing the validity of the mortgages as to the general creditors. The answer insisted that there was

Arnett *v.* Trimmer.

an understanding between the mortgagor and the mortgagees that the mortgages were not to be recorded, because of the imputation arising therefrom of financial inability upon the part of the mortgagor, and also because the general creditors had a right to act upon that understanding which it is said was communicated to them, and, acting upon it, they suffered thereby in giving greater credit to the mortgagor than they otherwise would. The great preponderance of proof, however, is that there was no such understanding between the mortgagor and the mortgagees; and furthermore, I believe there is no proof whatever that any creditor was deceived by the alleged understanding between the other contracting parties. It may be said that that branch of the case was practically abandoned.

At the hearing, the principal question seemed to be whether or not a horse, a wagon, sleigh and harness came within the purview of the chattel mortgages as part and parcel of the goods and chattels used in carrying on the said business. And the testimony upon this point is most clear that they are included in the chattel mortgages, and I cannot avoid so advising.

Mr. Trimmer, the assignee, insists that as such he is entitled to be protected. He insists that if this court, under the circumstances, had the right to interfere by injunction and by the appointment of a receiver whom it authorized to dispose of the estate, he should be protected against all costs and expenses whatsoever in the management of the estate and in the proceedings instituted in this court. He insists upon this as a general and universal proposition of law, and maintains that whatever may be the liabilities of a debtor, and whatever may be the extent or character of the liens upon the debtor's estate, he has an absolute and unqualified right, under the statute, to make an assignment for the equal benefit of his creditors, and that, as such assignee, he can resist all the rights and claims of such lien holders, and proceed to the disposition of the assets assigned to him, in total disregard of their rights, providing he proceeds according to the directions of the statute which authorizes such assignment. I have no doubt that a statute so beneficial in its nature, so demanded by the business interests of the community,.

should be so construed as to give the utmost favor and protection to an assignee for the benefit of the creditors whom he is supposed to represent. Mr. Trimmer has called my attention to *Currie* v. *Knight, 7 Stew. Eq. 485,* and to *Sayre* v. *Hewes, 5 Stew. Eq. 652,* as being opposed to my views; but I do not see that I am at all in conflict with them.

But to say, in an unqualified sense, that lien creditors must, under every condition, hold their hands and abide the time and methods of an assignee, even though he commit no flagrant acts, is a proposition which seems to me the legal mind cannot readily assent to. For example, it can scarcely be said that a mortgagee of real estate would, in such a case, be obliged to await the settlement of the affairs of an assignee, even though the assignee should be adjudged to have power to sell the land ; and the same principle would apply in the case of the mortgaging of goods and chattels. If the assignor had created an effectual lien upon the goods, equal, or more than equal, to their entire value, he could not, in any way, destroy or impair the interest which he himself had thus created, by making an assignment for the benefit of his other creditors. In such a case, all that it is conceived the assignee could do would be to sell the interest which the mortgagor might have in what is called the equity of redemption in the goods. But if his intermeddling with such goods for the purpose of making a sale of the equity of redemption should be such as tended to the destruction or impairment of the interests of the mortgagee, I think no court would hold that the mortgagee would be obliged to hold his hand and allow the assignee to go on with the waste, which, as to him and his interests, he might be committing. Conceding, therefore, great latitude of right to an assignee, under the statute, I think, at least in the instances named, it has a limit.

With these considerations in mind, taking the case before me, what appears? An assignment, it is true, for the benefit of creditors, and other creditors than the mortgagees, but with the clear proof that the chattels included in the mortgages are insufficient to satisfy them. In such a case, it seems to me beyond question that the complainant had a right to foreclose her mort-

gage as against the assignee, and to call upon this court to aid her in the protection of her property as such against the assignee; and especially, as in this case it was established, before the injunction issued, that waste was threatened by the assignee. I must therefore hold that when, in such a case, an assignee takes possession of property so mortgaged, and meddles with it, he does it at his peril. I do not say that he might not obtain protection from the court; I only hold that he is not justified in any act of waste, or in taking any steps that will tend to the diminution of the value of the property as against the mortgagee. If he attempts to sell and deliver goods and chattels, under such circumstances, without the aid and protection of the court, the mortgagee has a right to interpose and ask a court of equity to protect him. These things being so, an assignee would not be entitled to costs as against a mortgagee, unless the mortgagee in some way contributed, by his action or his silence, to the proceedings upon the part of the assignee. And in this case it appears that the mortgagees knew of the assignment and of the limited amount of goods, and of the action of the assignee, and made no interference until after some sales had been made, which must have been made with their full knowledge. The costs, therefore, in this case which were actually incurred by the assignee, amounting, as he says, to $23.50, he will be permitted to retain out of the fund which he has in his hands as the proceeds of the sale of these goods made by him, amounting, in all, to $232.10, the balance of which he will be directed to pay over to the receiver. I will advise a decree in accordance with these views.

It is plain that the complainant's mortgage is second in order of priority. The receiver should first pay the costs of the complainant, then the said mortgage of Arnett and Martindale, and then the mortgage of complainant, and if then anything remain, Mr. Trimmer is entitled to it as such assignee.